## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## JONESBORO DIVISION

TABBY BUTLER                                                                              PLAINTIFF

v.                                    No. 3:10CV00161 JLH

CRITTENDEN COUNTY, ARKANSAS;
R.E. BUSBY, individually, and in his official
capacity as Crittenden County Sheriff;
W.A. WREN, individually, and in his official
capacity as Chief Enforcement Officer,
Crittenden County Sheriff's Department;
RODNEY STRONG, individually, and in his
official capacity as Supervisor, Crittenden County
Sheriff's Department                                                                    DEFENDANTS

### OPINION AND ORDER

Tabby Butler is a former employee of the Crittenden County Jail who was suspended and

later discharged.  Butler now asserts race discrimination claims for unlawful suspension and

unlawful discharge; sex discrimination claims for unlawful suspension, unlawful discharge, and

harassment; retaliation claims for violations of the First Amendment and the Fourteenth

Amendment; claims for other violations of her procedural and substantive due process rights; and

claims alleging a civil conspiracy to commit race and sex discrimination.  She brings these claims

pursuant to 42 U.S.C. § 1981, 42 U.S.C § 1983, 42 U.S.C. § 1985, and the Civil Rights Act of 1991.[1]

Butler also alleges a state-law claim pursuant to the Arkansas Civil Rights Act of 1993, a state-law

claim for the tort of outrage, and a state-law claim for discharge in violation of public policy.

---

[1] In an introductory paragraph in her complaint, Butler states that she is bringing her complaint pursuant to section 215 of the Fair Labor Standards Act, but she makes no factual allegations in her complaint of conduct which would violate that Act.  The parties have not discussed the FLSA in their subsequent filings, including those related to the defendants' motion for summary judgment.  The Court will disregard the reference to the FLSA as it does not appear that Butler intends to assert a claim under that Act.

The defendants have moved for summary judgment, arguing both that Butler's claims are barred because she did not file suit within ninety days of receiving a right-to-sue letter, as required by Title VII, and that Butler's claims fail on the merits as a matter of law. In response to the limitations issue, Butler explains that she did not base her Complaint on Title VII violations but, instead, on 42 U.S.C. § 1981, § 1983, and the First and Fourteenth Amendments to the Constitution of the United States. She also contends that she has presented evidence to create a genuine dispute of material fact on each of her claims.

For the following reasons, the defendants' motion for summary judgment will be granted.

## I.

On December 18, 2000, Butler began working as a deputy jailer in the Crittenden County jail. In August of 2008, Rodney Strong became one of her supervisors. Butler testified in her deposition that Strong began harassing her "by asking her on dates, offering her money, questioning her about her personal life, offering to pay for her lunch, and inviting her to his home for dinner." Butler rejected Strong's advances. She told him that she was not interested, to leave her alone, to quit asking her out, and that she did not like him. All told, Strong asked her out about thirty to forty times. Butler also testified that Strong never touched her in any inappropriate manner.

Butler attaches a part of the jail's log book in which, on September 30, 2008, she documented that Strong and another officer visited a hospital where a juvenile inmate was being treated. A few months earlier, another jailer had filed an "Unusual or Special Incident Report" in which he recounted that the juvenile's mother had called and stated that the juvenile had run off, that Strong had come over to her house to do some work, and that Strong noticed the juvenile there but told the mother to let her come back later that night. On October 1, 2008, Strong suspended Butler for three

days without pay for insubordination, unsatisfactory behavior, and "writing statements that are detrimental about [her] supervisor in the pod log book[.]"  The defendants offer testimony that Butler was suspended because she failed to follow orders to write only necessary information in the log books and, instead, made references to "God and Jesus and things about the kids' personal home life and things about the staff as far as saying people were against her."

Theresa Bonner, the Chief Jailer, testified that, when she called Butler to inform her of the suspension on October 1, 2008, Butler complained that Strong had acted in an inappropriate manner towards her.  Bonner testified that she asked Butler to submit a written complaint when she returned to work from suspension.[2]  Bonner testified that when she finished her telephone call with Butler, she informed Zane Boyd, a jail administrator, about Butler's complaints and intent to submit a letter.

Although there is some ambiguity regarding the temporal sequence of events, it appears that, on October 7, 2008, Butler brought a letter dated October 6 to Bonner and Boyd stating in substance:

> Rodney Strong has been making sexual advances toward me for approximately 3 months.  He has asked me out on dates, offered money, questioned my personal/dating life, asked to touch my hair, offered to pay for my lunch, and invited me to his home for dinner.  I have continually turned down these advances, because I am not interested in him.  All of Mr. Strong's inappropriate and unwanted advances have made me uncomfortable in the work environment.

Bonner testified that she called Butler into her office and talked with her in Boyd's presence.  According to Bonner, Butler stated that Strong had told her that her hair was pretty, asked if he could touch it, and asked if he could buy her lunch or dinner.  Butler told Bonner and Boyd that she did not like Strong's comments.

---

[2] Butler contends that it was her idea to submit a written complaint.

3

Bonner testified that she and Boyd then spoke to Strong about Butler's complaint.[3]  Strong told Bonner and Boyd that Butler was insubordinate.  He denied that he intended to harass Butler, explaining that he was merely complimenting her and other employees when he referred to their hair. Bonner testified that she and Boyd talked with other staff members who worked with Butler.  These staff members confirmed that Strong complimented Butler's hair and offered to buy her lunch but stated that Strong regularly complimented the hairstyles of female subordinates, as well as the cologne of male subordinates, and that Strong regularly offered to buy lunch for his subordinates. Other jail employees testified that Strong would compliment staff members and offer to buy them lunch.  *See* Docs. #34-4, #34-6, #34-7, #34-8.  Bonner testified that she and Boyd told Strong to make sure that he did not say anything to Butler that did not concern jail business and to refrain from offering to buy her lunch or complimenting her.  Bonner testified that Strong agreed to do so.  Strong was not removed as a supervisor over Butler.

Butler admits that Strong ceased his advances towards her after the conduct was reported to Bonner and Boyd.  Nevertheless, on the morning of November 17, 2008, Butler gave her October 6th letter to Sheriff Busby.  Shortly thereafter, Bonner called her into Boyd's office.  Butler testified that she explained that she had given Busby the letter because Strong was still her supervisor and she felt that Bonner and Body had not done anything to remedy the situation.  Butler testified that Bonner and Boyd indicated that they thought they had resolved the matter and asked her if Strong was still bothering her.  Butler admitted that he had stopped bothering her.  Nonetheless, she informed Bonner

---

[3] Although Bonner's testimony indicates that she talked with Strong only after receiving Butler's letter, the undisputed facts, admitted by Butler, indicate that Butler did not submit the letter until October 7, but that Bonner and Boyd had already talked with Strong on October 6.  Further, Butler testified that "a day or two before" October 7, she met with Bonner and Boyd to make them aware of Strong's conduct.

and Boyd that she was not comfortable having him as a supervisor and that she did not consider the matter resolved while Strong remained her supervisor.  After this interview, Strong was moved to an another part of the jail.

It is undisputed that, on December 19, 2008, Butler engaged in a verbal altercation with a female coworker.  During Bonner's discussion with Butler regarding the incident, Butler said that she knew that several other jail employees "did not like her and were out to destroy her."  Bonner explained to Butler that Butler might have trouble getting along with other employees because of her tendency to respond to others with harsh words.  Butler retorted that she "doesn't fool with devilish people."

Bonner wrote a memorandum dated March 11, 2008, stating that Butler was tardy a total of nine times from February of 2008 until the date of the memorandum—a period of about five weeks.  Bonner talked with Butler at some point during 2008 and informed her that if she continued to be tardy, then she would be terminated.  Butler was tardy on December 25 and 26.  Bonner testified that, altogether, Butler was tardy at least sixty times in 2008.  On December 29, 2008, Sharon Beasley, a female supervisor, suspended Butler for continually being tardy.

Bonner testified that, in addition to Butler's tardiness, Butler failed to respect the chain of command, was disrespectful to her superiors, accused others of being evil, and claimed the jail was full of evil spirits.  Bonner testified that other employees reported that Butler made threats against them and cursed at them.  Bonner testified that Boyd told her that Butler should be terminated because of the issue with tardiness and her unsatisfactory behavior.  Butler denies this testimony and alleges that Bonner's explanations are merely a pretext for discrimination.  Butler was  terminated

on December 30, 2008.  Bonner testified that she, Boyd, and Beasley made the decision to terminate Butler.

Butler filed an EEOC claim for sexual harassment and retaliation on January 5, 2009.  The EEOC issued a right to sue to Butler on or about September 25, 2009.  Butler commenced this action on July 22, 2010.  Butler seeks compensatory and punitive damages in her complaint.

## II.

A court should enter summary judgment if the evidence demonstrates that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986).  The moving party bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).  If the moving party meets this burden, the nonmoving party must respond by coming forward with specific facts establishing a genuine dispute for trial.  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).  In deciding a motion for summary judgment, a court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor.  *PHL Variable Ins. Co. v. Fulbright McNeill, Inc.*, 519 F.3d 825, 828 (8th Cir. 2008).  A genuine dispute exists only if the evidence is sufficient to allow a jury to return a verdict for the nonmoving party.  *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.  When a nonmoving party cannot make an adequate showing sufficient to establish a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law.  *Celotex Corp.*, 477 U.S. at 322-23, 106 S. Ct. at 2552.

## III.

As an initial matter, the defendants contend that Butler's claims are barred because she failed to file her complaint within ninety days of receiving a right-to-sue letter from the EEOC, as required by Title VII. 42 U.S.C. § 2000e-16(c); *see also Frazier v. Vilsack*, 419 Fed. App'x 686, 689-90 (8th Cir. 2011) ("An employee who fails to bring a complaint in federal court following receipt of a right to sue letter within the time period allowed under Title VII is barred from ever bringing a federal claim related to that EEOC charge[.]") (collecting cases). Butler's right-to-sue letter is dated September 24, 2009, but her complaint was not filed until July 22, 2010. Butler does not dispute that her filing was untimely or contend that she is entitled to equitable tolling,[4] but she argues that Title VII's requirements do not apply to her claims because she is not bringing them pursuant to Title VII.

The Eighth Circuit recently held that Title VII's requirement of "exhaustion applies equally [to Title VII claims and] to discrimination claims brought under § 1983." *Tyler v. Univ. of Ark. Bd. of Trs.*, 628 F.3d 980, 989 (8th Cir. 2011). In *Tyler*, after noting that the plaintiff's section 1983 claims may be barred for failure to comply with Title VII's filing requirements, the Court went on to address the plaintiff's claims on the merits, saying that exhaustion is not jurisdictional. *Id*. at 989-90. This Court will do the same.

### A.   *Quid Pro Quo* **Sexual Harassment**

Butler alleges that she was subjected to *quid pro quo* sexual harassment. "Substantive standards for gender discrimination cases brought under Title VII and those brought under § 1983

---

[4] "The Supreme Court has held that the statute of limitations contained in § 2000e–16(c) is subject to equitable tolling 'in the same way that it is applicable to private suits.'" *Frazier*, 419 Fed. App'x at 688 (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95, 111 S. Ct. 453, 457, 112 L. Ed. 2d 435 (1990)).

are the same." *Tyler*, 628 F.3d at 990 (citing *Tipler v. Douglas Cnty., Neb.*, 482 F.3d 1023, 1027

(8th Cir. 2007)).  Therefore, to prevail on her *quid pro quo* claim, Butler must prove that

> (1) she was a member of a protected class; (2) she was subjected to unwelcome harassment in the form of sexual advances or requests for sexual favors; (3) the harassment was based on sex; and (4) her submission to the unwelcome advances was an express or implied condition for receiving job benefits or her refusal to submit resulted in a tangible job detriment.

*Ogden v. Wax Works, Inc.*, 214 F.3d 999, 1006 n.8 (8th Cir. 2000) (citing *Cram v. Lamson &*

*Sessions Co.*, 49 F.3d 466, 473 (8th Cir. 1995)).  The issue here is whether Butler has presented

evidence to create a genuine dispute of material fact on the fourth element.

Butler's three-day suspension without pay is a tangible job detriment.  *McClure v. Career*

*Sys. Dev. Corp.*, 447 F.3d 1133, 1137 (8th Cir. 2006) (collecting cases).  Nevertheless, Butler cannot

show that her rejection of Strong's alleged sexual harassment caused her suspension.  Butler testified

that "[Strong] and another worker left with an inmate, and I just wrote it in the book.  I got

suspended for that."  Taking as true Butler's testimony that Strong suspended her for describing his

trip to the hospital, her suspension was not caused by her refusal to acquiesce to his advances.

In her brief, however, Butler compares her description of Strong's trip to another employee's

"Unusual or Special Incident Report," and contends that her description of Strong's conduct "pale[s]

in comparison" to that of the report, which suggests that Strong's decision to punish her for

describing his trip to the hospital was a pretext for retaliating against her for her rejections of his

advances.  Butler has provided no evidence, however, about the standards regarding log book entries

versus those governing unusual or special incident reports.  Bonner testified that employees were

only supposed to write necessary information in the jail log books, whereas Butler has offered no

evidence that the other jailer's report was a violation of jail policy.  Furthermore, Butler also wrote

about "God and Jesus and things about the kids' personal home life and things about the staff as far as saying people were against her."  Butler offers no evidence to dispute this testimony.  In fact, she appears to concede that she wrote in the log books about "God, Jesus, the juveniles' personal home life and about the staff."  Doc. #35, p. 13.  Thus, Butler has failed to offer evidence tending to show that the defendants' explanation for her suspension is pretextual and that Strong actually suspended her for rejecting his advances.

As to Butler's contention that she was terminated because she rejected Strong's advances, that claim also fails.  Butler offers no evidence of a causal link between her rejection of Strong's advances and her termination.  Butler concedes that Strong stopped bothering her after October 6, 2008.  She was terminated on December 30, 2008; nearly three months later.  Generally, in the retaliation context, "more than a temporal connection between the protected conduct and the adverse employment action is required[.]"  *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 832 (8th Cir. 2002).  Furthermore, "the interval of two months between the complaint and [the plaintiff]'s termination so dilutes any inference of causation that we are constrained to hold as a matter of law that the temporal connection could not justify a finding in [the plaintiff]'s favor on the matter of causal link."  *Kipp v. Mo. Highway & Transp. Comm'n.*, 280 F.3d 893, 897 (8th Cir. 2002).  That Butler was terminated almost three months after Strong ceased bothering her is insufficient as a matter of law to establish that she was terminated because of her rejection of his advances.  Moreover, that Butler was terminated by Strong's superiors and peers, Bonner, Boyd, and Beasley, two of whom are females, not by Strong himself, undermines Butler's contention that she was terminated in retaliation for rejecting Strong's advances.

The defendants are entitled to summary judgment on the merits of Butler's *quid pro quo* sexual harassment claim.

## B.    Hostile Work Environment

As noted, Butler also alleges that she was subjected to sexual harassment that created a hostile work environment.  To prevail on this claim, Butler must show that "(1) she belonged to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on sex; and (4) the harassment affected a term, condition, or privilege of her employment." *Ogden*, 214 F.3d at 1006 n.9 (citing *Schmedding v. Tnemec Co., Inc.*, 187 F.3d 862, 864 (8th Cir. 1999)).  Again, the issue is whether Butler has presented evidence sufficient to create a genuine dispute of material fact on the fourth element.

To establish that Strong's harassment affected an employment term, condition, or privilege, Butler must demonstrate that her workplace was "permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Vajdl v. Mesabi Acad. of KidsPeace, Inc.*, 484 F.3d 546, 550 (8th Cir. 2007) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L. Ed. 2d 295 (1993)).  The standard is both objective and subjective; Butler must show that she actually perceived the environment as abusive and that a reasonable person would find the environment to be hostile.  *Duncan v. Gen. Motors Corp.*, 300 F.3d 928, 934 (8th Cir. 2002). To determine whether harassment was sufficiently severe or pervasive, courts consider "the totality of the circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance.' " *Id.* (quoting *Harris*, 510 U.S. at 23, 114 S. Ct.

10

at 371).   These high standards are intended to "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing," as the purpose of Title VII is not to "purge the workplace of vulgarity."  *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275, 2283-84, 141 L. Ed. 2d 662 (1998) and *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir. 1995)).

Butler has testified that Strong asked her on dates about thirty to forty times, tried to give her money, questioned her about her personal and dating life, asked to touch her hair, offered to pay for her lunch, and invited her to his home for dinner.  Butler says that she rebuffed Strong, even explicitly telling him that she did not like him, but that he continued to hound her with advances.

Strong's alleged harassment falls short even of those cases in which the Eighth Circuit held as a matter of law that the alleged conduct was not sufficiently severe or pervasive.  *See*, *e.g.*, *Anderson v. Family Dollar Stores of Ark., Inc.*, 579 F.3d 858, 860-61 (8th Cir. 2009) (manager rubbed plaintiff's shoulders and back during her training sessions, told her how far she went in the company was up to him, called her "baby doll," called her while on vacation and said she should be in bed with him and a Mai Tai, grabbed her, pulled her, and pushed her, and said "you are just not going to be one of my girls, are you?"); *Henthorn v. Capitol Commc'ns, Inc.*, 359 F.3d 1021, 1025 (8th Cir. 2004) (manager asked plaintiff out every day for the first few weeks, called her at home late at night to invite her to a concert, and criticized her and changed her schedule after she rejected his advances); *Duncan*, 300 F.3d at 933-34 (supervisor propositioned plaintiff for a "relationship," touched her hand, requested that she sketch a phallic-shaped planter, displayed a poster for the "Man Hater's Club", and requested that plaintiff type the "He-Men Women Haters Club" beliefs, which were derogatory towards women); *Scusa v. Nestle USA Co., Inc.*, 181 F.3d 958, 961-62 (8th Cir.

1999) (coworker patted plaintiff on the bottom, blew her kisses, and made sexual comments toward her; another coworker made threatening gestures and yelled obscenities at her; plant manager slammed his fist on the table during meeting to discuss plaintiff's sexual harassment claims and yelled "you f****** girls better get your stories straight").

Similarly, the opinions upon which Butler relies involved much more severe conduct than the instant case. *See Jones v. Wesco Invs., Inc.*, 846 F.2d 1154, 1155 (8th Cir. 1988) (Plaintiff was barraged with repeated sexual advances, request for sexual favors, and other verbal or physical contact of a sexual nature. For instance, employer would rub his hands up and down the sides of her body, touching her breasts, would pinch her, pat her on the bottom, kiss her on the top of her head, and even put his hand up her dress on her outside thigh. He also put his arms around her when alone and tried to kiss her. Employer stated that someday her breasts would be his and that she should spend more time where it was cool because he could see her nipples much better.); *Lipsett v. Univ. of P.R.*, 864 F.2d 881 (1st Cir. 1988) (Summary judgment not appropriate where resident physicians made a barrage of comments, directed at the plaintiff, that women should not be surgeons; a supervisor threatened to drive the plaintiff out of the program; resident physicians made repeated sexual advances; the resident physicians posted pinups, including Playboy centerfolds, a sexually explicit drawing of the plaintiff's body, and a list containing explicitly sexual, derogatory nicknames of the female residents, including the plaintiff, on the walls of the male residents' rest facility.).

It is true that a "hostile work environment is a cumulative phenomenon, and a series of individual episodes of inappropriate behavior eventually can amount to a hostile environment." *Alvarez v. Des Moines Bolt Supply, Inc.*, 626 F.3d 410, 421 (8th Cir. 2010) (internal quotation marks omitted). Butler contends that Strong's conduct was particularly pervasive—he asked her out thirty

or forty times from the time that she was transferred to his supervision in August until she met with Bonner and Boyd in early October.  However, while Strong asked her if he could touch her hair and invited her to his house for dinner, she testified that he never touched her in any inappropriate way. Butler does not allege that Strong used sexual slurs or engaged in any of the kinds of particularly offensive conduct present even in cases in which the Eighth Circuit has held as a matter of law that no hostile work environment existed.  Accepting Butler's account as true for summary judgment purposes, Strong's conduct was not more egregious than the conduct that the Eighth Circuit, in the opinions cited above, held insufficient as a matter of law to establish a hostile work environment.

The defendants are entitled to summary judgment on the merits of Butler's claim that she was subjected to sexual harassment that created a hostile work environment.

**C.     Unlawful Suspension and Discharge Based on Sex and Race Discrimination**

Butler asserts that she was suspended and subsequently discharged because of her sex and her race.  To defeat summary judgment, Butler must produce either direct evidence of discrimination or evidence to create an inference of it under the *McDonnell Douglas* burden-shifting framework. *Young-Losee v. Graphic Packaging Int'l, Inc.*, 631 F.3d 909, 912 (8th Cir. 2011).  "If a plaintiff produces direct evidence, evidence of the employer's motives for a termination is an issue for trial, not summary judgment." *Id.*

Butler contends that she has direct evidence that she was suspended and discharged due to her race and sex inasmuch as she was the only jail employee discharged for tardiness, though not the only employee with a history of tardiness.  "[D]irect evidence is evidence 'showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated' the adverse

13

employment action." *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004) (quoting *Thomas v. First Nat'l Bank of Wynne*, 111 F.3d 64, 66 (8th Cir. 1997)).  Even if other jail employees were tardy and Butler was the only employee discharged for tardiness, that would not show a specific link between any alleged discriminatory animus and her termination.  It is well-established that a plaintiff can meet the fourth element of her prima facie case under the *McDonnell Douglas* burden-shifting framework by showing that "similarly situated employees who are not members of the protected group were treated differently."  *Gilmore v. AT & T*, 319 F.3d 1042, 1046 (8th Cir. 2003).  On Butler's argument, a plaintiff with evidence of disparate treatment would not need to invoke the *McDonnell Douglas* burden-shifting framework, which is inconsistent with the vast body of case-law in this area.  Evidence that the plaintiff was treated differently from other employees, standing alone, is not direct evidence of sex or race discrimination.

At the initial stage of the *McDonnell Douglas* burden-shifting framework, a plaintiff must establish that (1) she is a member of a protected class; (2) she was qualified to perform her job or was meeting her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) there are facts giving rise to an inference of unlawful sex or race discrimination. *Wells v. SCI Mgmt., L.P.*, 469 F.3d 697, 700 (8th Cir. 2006) (gender); *Wheeler v. Aventis Pharm.*, 360 F.3d 853, 857 (8th Cir. 2004) (race), *abrogated on other grounds by Torgerson*, 643 F.3d at 1059.

Butler is a black female who had worked at the county jail for eight years before being suspended and ultimately terminated.  Thus, she can establish the first three elements of her prima facie case.  *See Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 92 (2d Cir. 2001) (seven years on the job sufficient to establish third prong of prima facie case).

14

"The required prima facie showing is a flexible evidentiary standard, and a plaintiff can meet the fourth element in a variety of ways, such as by showing more-favorable treatment of similarly-situated employees who are not in the protected class." *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1019 (8th Cir. 2011) (internal quotation marks omitted). As noted above, Butler contends that her suspension for writing in the log book about an incident involving a hospital trip by Strong is evidence of sex and race discrimination. Butler offers evidence that another jail employee filled out an unusual or special incident report describing conduct that could be embarrassing for Strong. As explained above, Butler has provided no evidence about the standards regarding log book entries versus those governing unusual or special incident reports. *See Smith v. Monsanto Chem. Co.*, 770 F.2d 719, 723 (8th Cir. 1985) (the plaintiff has the burden of showing that proffered comparators are similarly situated). On the face of it, the unusual or specific incident report appears to be a proper method for documenting a complaint from a citizen, which is how it was used; but the jail log does not appear to be the appropriate place for one jail employee to criticize another. In fact, Bonner testified that, before the incident leading to Butler's suspension, she and Boyd counseled Butler that she should write only necessary information in the jail's log book. Butler has offered no evidence tending to establish that she was treated differently from others who wrote similar information in the jail's log book. *See Hervey v. Cty. of Koochiching*, 527 F.3d 711, 720 (8th Cir. 2008) ("To prove discrimination based on similarly-situated persons of another sex, however, 'the individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances.") (quoting *Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000)). Even considering the flexible evidentiary

standard for the fourth prong, Butler has failed to present evidence from which it would be reasonable to infer that she was suspended due to her race or sex.

As to her termination, Butler contends that other employees who violated jail policy received preferential treatment either because they were not terminated or they received the benefit progressive discipline not provided to Butler.  Butler specifically points, "most notably," to evidence that Strong, a black male, was disciplined for failing to properly search a detainee and failing to follow procedure regarding ordering lunch; that Patrick Clark engaged in numerous violations in 2006, and he was later terminated; that Erek Balentine engaged in substandard work performance and failure to follow directions, and he was later terminated.  None of these violations were for tardiness.  *See Hervey*, 527 F.3d at 720.  Furthermore, two of the employees (Clark and Balentine) were terminated for their misconduct.  Strong only had two instances of misconduct, whereas Bonner testified that Butler was tardy about sixty times in 2008.

Butler also points to Dawn Duffer, a jail employee who was excessively tardy.  Bonner suspended Duffer for two days and threatened to suspend her for five days if she continued to be tardy, and, ultimately, to terminate her if she did not improve.  Butler argues that she was treated worse than Duffer because Butler was suspended for two days and then fired without the benefit of the five-day suspension step.  The problem with this comparison is that Duffer, like Butler, is a black female.  Comparative evidence of disparate treatment is only probative of discrimination when the employee receiving preferential treatment does not belong to the same protected class.  Similarly, Butler points to eight other employees who were punished for excessive or chronic tardiness but who were not terminated.  Of these eight, four were black females, one was a white female, two were black males, and one was a white male.  Of the three male employees, Jeff Thomas was tardy four

16

times, Fred Laxton was not tardy but was suspended for numerous absences, and Ollie Brisco was tardy seventeen times.  Of the two white employees, Fred Laxton, as mentioned, was suspended for numerous absences, and Lindsey Peterson was tardy three times.  Butler is not similarly situated to the three males nor the two whites whom she identified as comparators because she was tardy many more times than they.  *See Gilmore*, 319 F.3d at 1046 ("Three other individuals are not similarly situated because [the plaintiff] did not establish that the circumstances of their misconduct were comparable in severity or frequency to [the plaintiff]'s infractions."); *see also Hervey*, 527 F.3d at 720.

As noted, Butler may rely on evidence other than comparators to establish an inference of discriminatory animus.  Butler makes unsupported allegations that her complaints were not taken seriously,[5] and that if she had been white her complaints against Strong would have been resolved immediately in the form of Strong's removal.  She presents no evidence, however, tending to establish that Bonner and Boyd treated similar complaints from white employees or male employees more seriously than Butler's complaint.  Butler's unsupported allegations do not establish an inference that she was terminated based on sex or race discrimination.  Although Strong was not removed as her supervisor until she complained to Busby, this does not tend to establish that Bonner and Boyd terminated her because of her sex or race.  Finally, Butler asserts that she "was religious" and "straight as an arrow."  Such allegations have nothing to do with an unlawful discharge claim based on sex or race discrimination.

---

[5] This allegation is of questionable in light of Butler's concessions that Bonner and Boyd investigated her complaint and told Strong to stop complimenting her, as well as that Strong stopped bothering her thereafter.

Assuming that Butler could establish her prima facie case, the burden would shift to the defendants to offer a legitimate justification for the supervision and termination. *Gilmore*, 319 F.3d at 1046. Bonner testified that Strong suspended Butler for writing "inappropriate things" in the jail log books, such as "things about God and Jesus and things about the kids' personal home life and things about the staff as far as saying people were against her." Bonner testified that Butler was terminated because she was tardy approximately sixty times in 2008 and because of complaints from other employees that Butler was rude and disrespectful. *See Clearwater v. Indep. Sch. Dist. No. 166*, 231 F.3d 1122, 1127 (8th Cir. 2000) (holding that tardiness is a legitimate reason for discharge); *Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir. 1982) (plaintiff "did not get along or communicate well with other" employees).

Because the defendants offer legitimate reasons for Butler's suspension and termination, the burden shifts to Butler to demonstrate that these justifications are pretexts for discrimination. *Gilmore*, 319 F.3d at 1046. As noted, Butler appears to concede that she wrote in the log books about "God, Jesus, the juveniles' personal home life and about the staff." Doc. #35, p. 13. Furthermore, Butler points to no evidence tending to contradict Bonner's testimony regarding complaints about Butler. In fact, Butler admits that she had a verbal altercation with a coworker, that she told Bonner that "she doesn't fool with devilish people," and that Bonner had warned her that she would be terminated if she continued to be tardy. Doc. #36, p. 4-5. Although Butler believes that Strong should have been moved after she complained, Bonner testified that she and Boyd took the complaint seriously, investigated by talking to other employees and Strong, and ordered Strong to cease complimenting her. Butler admits that, after Bonner and Boyd intervened, Strong stopped bothering her. Further, Butler was not terminated until nearly three months after she complained of

18

Strong's conduct.  *Cf. Kipp*, 280 F.3d at 897.  In addition, one-half of the individuals whom Butler identified as receiving preferential treatment were themselves black females, which undermines her claim that Bonner, Boyd, and Beasley, two of whom were females, terminated Butler based on sex or race discrimination.  *Cf. Jackson v. Mo. Pac. R. Co.*, 803 F.2d 401, 406 (8th Cir. 1986) (no race discrimination where employer punished white employees and black employees in the same manner); *Smith*, 770 F.2d at 724 (same).  There is simply no evidence that the defendants' explanation for terminating Butler was a pretext for sex or race discrimination.

The defendants are entitled to summary judgment on Butler's unlawful suspension and discharge claims based on gender and race discrimination.

**D.    Retaliation**

Butler asserts retaliation claims pursuant to section 1981 as well as on the First Amendment and the Fourteenth Amendment, pursuant to section 1983.  First Amendment and section 1981 retaliation claims are analyzed under the same framework as claims of retaliation under Title VII. *Tyler*, 628 F.3d at 986 (First Amendment); *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1060 (8th Cir. 1997) (section 1981).  To establish a prima facie case of retaliation, Butler must present evidence that (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the her activity and the employment action.  *Thompson v. Bi-State Dev. Agency*, 463 F.3d 821, 826 (8th Cir. 2006) (citing *Kasper v. Federated Mut. Ins. Co.*, 425 F.3d 496, 502 (8th Cir. 2005)).  Because suspension and termination are adverse employment actions, there is no dispute that Butler can satisfy the second element of her prima facie case.

With respect to the first element of her prima facie case, Butler alleges in her complaint that she was terminated for filing a charge with the EEOC.  Butler also contends that she was terminated

for refusing to submit to Strong's advances and for her written complaint about Strong's conduct. As noted above, Butler testified that Strong suspended her for describing a trip he took to a nearby hospital in the jail's log book, but she contends in her brief that the suspension was actually in retaliation for Butler's refusal to accede to Strong's advances. For the sake of resolving her retaliation claims, the Court will construe Butler's brief as contending that she was suspended both for rebuffing Strong's advances and for her notations within the log book.

Section 1981 prohibits only purposeful racial discrimination in the making and enforcing of contracts; it does not encompass sex discrimination claims. *Manning v. Metro. Life Ins. Co., Inc.*, 127 F.3d 686, 689 (8th Cir. 1997), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006). Some instances that Butler claims constitute protected activity—refusing Strong's advances, writing in the jail log book, and her EEOC charge—only implicate sex discrimination and free speech; those instances are not reasonably related to race discrimination.

Turning to her First Amendment retaliation claim, " 'the First Amendment does not prohibit managerial discipline based on [a public] employee's expressions made pursuant to [his] official responsibilities.' " *McGee v. Pub. Water Supply, Dist. No. 2 of Jefferson Cnty., Mo.*, 471 F.3d 918, 919 (8th Cir. 2006) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 424, 126 S. Ct. 1951, 1961, 164 L. Ed. 2d 689 (2006)). Bonner testified that jailers were instructed to write only necessary information in the jail's log book. Because making such entries fall within the sphere of a jailer's official responsibilities, Butler's "straightforward notations of Defendant Strong's activities in the POD log book" are not constitutionally protected speech within the meaning of the First Amendment. *See also Lindsey v. City of Orrick, Mo.*, 491 F.3d 892, 897 (8th Cir. 2007) ("[T]o trigger constitutional

protection, an employee must "speak as a citizen addressing matters of public concern.") (quoting *Garcetti*, 547 U.S. at 417, 126 S. Ct. at 1957).

Nevertheless, filing a charge with the EEOC is protected activity under the First Amendment. *Tyler*, 628 F.3d at 986.  Similarly, complaining about conduct that one reasonably believes to constitute harassment is protected activity.  *See Logan v. Liberty Healthcare Corp.*, 416 F.3d 877, 881 n.3 (8th Cir. 2005) (citing *Peterson v. Scott Cnty.*, 406 F.3d 515, 525 n. 3 (8th Cir. 2005)).  Here, Butler filed an EEOC complaint alleging retaliation and sex discrimination.  She also complained to Strong, as well as Bonner, Boyd, and Busby, about Strong's conduct that she perceived to be sexual harassment.  She further testified that she was suspended and terminated for complaining of race discrimination.  Doc. #22-1, p. 21.  Therefore, Butler has offered evidence tending to establish the first element of her prima facie case as to these activities.

Turning to the third element of her retaliation claim, Butler filed her EEOC charge after she was suspended and terminated, so it is not possible that she was suspended or terminated for filing the EEOC charge.  Butler presents nothing to establish that any of the defendants were aware of her intent to file an EEOC charge prior to her suspension or termination.  *See Robinson v. Potter*, 453 F.3d 990, 994 (8th Cir. 2006); *Wilson v. Northcutt*, 441 F.3d 586, 592-93 (8th Cir. 2006) (noting the decision-makers must have awareness of the protected activity).  Similarly, because Strong suspended Butler before she complained to Bonner and Boyd about Strong's conduct, Butler cannot establish that he suspended her because she complained.

Butler fails to show that Bonner, Boyd, and Beasley terminated her because of her written complaint, because she refused to acquiesce to Strong's advances, or because she complained of race discrimination.  The only evidence that Butler has to offer is the temporal correction: she was

21

terminated nearly three months after she complained to Bonner and Boyd. This temporal connection, without more, is insufficient to establish causation. *See Lewis v. St. Cloud State Univ.*, 467 F.3d 1133, 1138 (8th Cir. 2006) ("We have held that an interval as brief as two months did not show causation for purposes of establishing a retaliation claim and that a two-week interval was 'sufficient, but barely so.' ") (citations omitted). Butler points to no other evidence that Bonner, Boyd, and Beasley desired to punish her for complaining about Strong's conduct. To the contrary, Bonner testified, and Butler concedes, that Bonner and Boyd investigated Butler's complaint and ordered Strong to leave her alone, and that Strong complied. Moreover, Strong did not participate in the termination decision because he was moved to another part of the prison when Butler complained to Busby that Strong was still her supervisor. Butler's belief that Bonner, Boyd, and Beasley, two of whom are females, terminated Butler to retaliate against her for complaining of sexual harassment for refusing Strong's advances, is not evidence. No reasonable jury could find that Butler was terminated in retaliation for complaining about Strong's conduct or for rebuffing Strong's advances or that she was terminated for complaining about race discrimination.

The remaining issue is whether Butler has presented evidence tending to establish that Strong suspended her for rejecting his advances. Butler testified that Strong's numerous advances commenced when he became her supervisor in August of 2008 and continued up the day that he suspended her at the beginning of October. Assuming *arguendo* that this evidence is sufficient to establish the third element of Butler's prima facie case, the burden switches to the defendants to articulate a legitimate justification for the suspension. *Gibson v. Am. Greetings Corp.*, --- F.3d ----, 2012 WL 686198, at *9 (8th Cir. Mar. 5, 2012). As discussed in detail above, Bonner testified that Butler was suspended for making inappropriate entries in the jail's log book. Butler does not dispute

22

Bonner's testimony on this point.  Indeed, Butler appears to concede that she wrote in the log book about "God, Jesus, the juveniles' personal home life and about the staff."  Doc. #35, p. 13.  Butler provides no evidence tending to show that the defendants' explanation for her three-day suspension was a pretext for her refusal to accede to Strong's proposals.

The defendants are entitled to summary judgment on Butler's retaliation claims.

**E.**     **Due Process**

Although Butler asserts a procedural due process claim in her complaint, she makes no specific allegations explaining how the defendants violated her procedural due process rights beyond identifying "sexual harassment, retaliation, and discharged as described herein."  Doc. #1, p. 6. "Procedural due process claims require a two-step analysis."  *Krentz v. Robertson*, 228 F.3d 897, 902 (8th Cir. 2000).  "Initially, a plaintiff must demonstrate that the state deprived him of some 'life, liberty, or property' interest."  *Id.*  "If successful, the plaintiff must then establish that the state deprived him of that interest without sufficient 'process.' "  *Id.*

Assuming that Butler's employment was a property interest, Butler makes no allegations and identifies no evidence tending to establish that the defendants deprived her of her employment without sufficient process.  For example, Butler has not alleged or provided evidence that her termination was not "preceded by notice and opportunity for hearing appropriate to the nature of the case."  *Id.* (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S. Ct. 1487, 1493, 84 L. Ed. 2d 494 (1985)).  Nor has Butler alleged that she complied with any existing exhaustion requirements.  *See Christiansen v. W. Branch Cmty. Sch. Dist.*, --- F.3d ----, 2012 WL 952813, at *5 (8th Cir. Mar. 22, 2012) (collecting cases requiring employee to file a post-termination grievance

in order to bring a procedural due process challenge to post-termination process).   Therefore,

Butler's procedural due process claim will be dismissed.

Butler's complaint contains a single allegation that the defendants "have violated her

federally protected rights of substantive due process[.]"   Doc. #1, p. 6.   Butler makes no other

reference to substantive due process in her complaint or in her brief.

> Substantive due process is concerned with violations of personal rights . . . so severe
> . . . so disproportionate to the need presented, and . . . so inspired by malice or sadism
> rather than a merely careless or unwise excess of zeal that it amounted to brutal and
> inhumane abuse of official power literally shocking to the conscience.

*C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 634 (8th Cir. 2010) (quoting

*Golden ex rel. Balch v. Anders*, 324 F.3d 650, 652-52 (8th Cir. 2003).   Viewed in the light most

favorable to Butler, the evidence is insufficient to establish a claim for sexual harassment, sex

discrimination, race discrimination, or retaliation.   *A fortiori*, Butler cannot establish that she

suffered a violation of personal rights so severe, disproportionate, malicious, or sadistic as to entitle

her to the protections of substantive due process.   Therefore, the defendants are entitled to summary

judgment on Butler's substantive due process claim.

**F.      Civil Conspiracy**

Because summary judgment will be granted on Butler's constitutional claims brought

pursuant to sections 1981 and 1983, her section 1985 claim for civil conspiracy to commit race and

sex discrimination is moot.   *See Cook v. Tadros*, 312 F.3d 386, 388-89 (8th Cir. 2002); *Hanten v.*

*Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 809 (8th Cir. 1999).

Furthermore, although Butler contends that Strong, Busby, and W.A. Wren, the jail's Chief

Enforcement Officer, conspired against her, she points to no evidence that either Busby or Wren

personally participated in any conspiracy to commit sex or race discrimination.  In fact, Butler admits that Busby did not learn of her complaints about Strong until she gave him the letter in the middle of November, and she testified that she sued Wren because of his position and not based on specific evidence that he was aware of Strong's conduct.[6]  Butler points to no evidence that black jailers were treated worse than whites, or that female employees were treated worse than males.  She was terminated by Bonner, Boyd, and Beasley (not by Busby or Wren) nearly three months after Bonner and Boyd told Strong to stop complimenting her.  A conspiracy "is an agreement between two or more people to commit a wrong against another person."  *Doe v. Baxter Healthcare Corp.*, 380 F.3d 399, 410 (8th Cir. 2004).  Butler cannot establish that an agreement between Strong, Busby, and Wren existed merely by attempting to impute Strong's conduct to his superiors.  Butler's civil conspiracy claim fails because Strong cannot conspire with himself, and Butler offers no evidence that Busby or Strong personally participated in any conspiracy to commit sex or race discrimination.

Therefore, the defendants are entitled to summary judgment on Butler's section 1985 civil conspiracy claim.

**G.**     **State Law Claims**

Having dismissed Butler's claims that arise under federal law, the Court declines to exercise supplemental jurisdiction over her claims that arise under state law.  *See* 28 U.S.C. § 1367(c)(3).

---

[6] However, Wren did testify that Butler once complained to him about Strong's conduct. According to Wren, he told Butler that she needed to report the incident to Boyd.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is GRANTED. Doc. #20.  Butler's federal claims are dismissed with prejudice.  Her state law claims are dismissed without prejudice.

IT IS SO ORDERED this 29th of March, 2012.

_____

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE